Grafton
No. 79-126

# THE STATE OF NEW HAMPSHIRE

## v.

# JOHN F. STAPLES

May 5, 1980

*Thomas D. Rath*, attorney general, and *John C. Boeckeler*, assistant attorney general (*Peter W. Mosseau*, attorney, orally), for the State.

*Thomas M. Pancoast*, of Littleton, by brief and orally, for the defendant.

BROCK, J. The defendant was tried before a jury and convicted of aggravated felonious sexual assault, RSA 632-A:2 (Supp. 1979). During the trial, the defendant objected to the admission of certain opinion testimony and to the admission of evidence concerning defendant's prior convictions. Both objections were overruled and the defendant seasonably excepted.

Only questions of law concerning the admissibility of the opinion evidence were initially reserved and transferred to this court by the Trial Court (*Johnson, J.*). Prior to oral argument on appeal, the defendant's new attorney learned that during the trial, the trial justice had discussed with counsel, in chambers and off the record, the admissibility of certain prior convictions and had ruled them admissible. As a result, defendant's attorney moved to amend the transferred case. The motion was granted and a supplementary reserved case was transferred to this court on the questions of law raised by the exception to the admissibility of defendant's prior convictions.

On the night of September 9, 1976, and during the early morning hours of September 10, the prosecutrix was held and

repeatedly raped by two individuals. After the men released her, she reported the rape to the police, made a statement, and was then transported to a hospital and examined by Dr. Imrie. The record before us does not disclose the contents of the prosecutrix's statement to the police.

At trial eight months later, the prosecutrix's memory of the events leading up to the rape was poor. In fact, she had no independent recollection of her activities during the several hours immediately preceding the rapes. Her recollection of the rapes, however, was vividly detailed in her testimony at the trial. On cross-examination the defendant's attorney inquired at length into the prosecutrix's inability to recall her activities prior to the time she was raped, and he used her written statement to suggest that she had, on the morning following the rape, recalled her activities. Defendant's counsel emphasized that she had been drinking earlier in the evening. During cross-examination, the prosecutrix stated that her memory loss was "probably [due to] drinking."

Following the prosecutrix's testimony, the State called Dr. Imrie who had examined her following the rape. His qualifications as an expert witness were stipulated to by the defendant insofar as the expertise related to the physical examination of the prosecutrix.

During the State's direct examination, Dr. Imrie testified that memory loss was not unusual in the case of rape victims. In rebutting the implication that drunkenness caused the memory loss, the doctor stated, "When I examined [the prosecutrix] she was sober and . . . I do not think it at all unreasonable to conclude that she did, in fact, have a mental block as to the occurrences of the previous night."

The first issue before this court is whether the trial court abused its discretion by permitting a general practitioner to testify about the prosecutrix's memory loss. The defendant asserts that the doctor should not have been permitted to testify about the prosecutrix's memory loss because the doctor lacked proper experience and training and because his testimony confused and misled the jury.

■■ Opinion evidence is admissible if the court finds that the expert is qualified to give an opinion on the issue raised and that it will aid the jury. *Wrobleski v. Constellation Corp.*, 118 N.H. 532, 533, 388 A.2d 944, 945 (1978); *Gauthier v. Bergeron*, 107 N.H. 153, 154, 218 A.2d 433, 434 (1966); *Dowling v. L. H. Shattuck, Inc.*, 91 N.H. 234, 236, 17 A.2d 529, 532 (1941). The trial court has broad

discretion to admit such testimony. *Wrobleski v. Constellation Corp., supra* at 533, 388 A.2d at 945; *Danos v. Manchester Coal & Ice Co.*, 94 N.H. 200, 49 A.2d 926 (1946).

■■ The record discloses that Dr. Imrie had been a physician for over twenty years and had examined several rape victims who had exhibited similar memory loss. In addition, he had recently attended a course covering psychological problems of rape victims. In light of the doctor's experience and training, we cannot say that the court abused its discretion in finding the doctor qualified to testify on such matters. *See Wrobleski v. Constellation Corp. supra; Jackson v. Emile J. Legere, Inc.*, 110 N.H. 252, 265 A.2d 18 (1970); 3 C. TORCIA, WHARTON'S CRIMINAL EVIDENCE § 589 (13th ed. 1973). Moreover, because the doctor's testimony served to rebut the defendant's contention that the prosecutrix's memory loss was due to intoxication, the evidence was admissible to aid the fact-finder in determining the truth. *See Wrobleski v. Constellation Corp., supra* at 533, 388 A.2d at 945.

■ Defendant next argues that Dr. Imrie improperly gave an opinion about the prosecutrix's credibility when he noted that it was not "unreasonable to conclude that she did, in fact, have a mental block as to the occurrences of the previous night." Defendant contends that this testimony bolsters the prosecutrix's allegation that she was raped because it ascribed her memory loss to trauma rather than intoxication. Although the doctor's opinion corroborates the prosecutrix's testimony that she was raped, the doctor's testimony did not express an opinion whether the witness should be believed; rather, the doctor concluded from an examination of the victim within several hours of the rape, and from his own experience with such victims, that one could reasonably find that her loss of memory was due to trauma rather than intoxication. Following defendant's logic, opinion evidence would be excluded whenever it corroborated a witness's testimony. We reject that reasoning.

Defendant also argues that the doctor was improperly permitted to testify as to another cause of the memory loss. Logically, this implies that a lay witness is better qualified to diagnose the cause of his physical and psychological symptoms and, therefore, forecloses expert testimony on that point. We also reject that argument.

■ The next issue before this court is whether the trial court correctly ruled that the defendant's credibility could be impeached by the use of prior convictions. Defendant argues that the trial court abused its discretion by permitting the State to introduce this evidence because the convictions were irrelevant to the alleged rape and too remote in time. It is well established in this State that evidence of a defendant's prior convictions may be admitted in the discretion of the trial court when the defendant has testified and the State seeks to impeach his credibility. *State v. Wayne Kelley*, 120 N.H. 14, 413 A.2d 300 (1980).

■ Defendant argues that the trial court abused its discretion by permitting the State to introduce evidence of the defendant's prior offenses because none of them had any relevance to the alleged rape. Relevance for impeachment purposes, however, does not turn on a nexus between prior convictions and the alleged crime, but upon the ability and willingness of a witness to tell the truth. When a witness voluntarily testifies, as did the defendant here, he asks the jury to believe him. The jury should be informed about the sort of person asking them to take his word. *State v. Wayne Kelley supra; State v. Cote*, 108 N.H. 290, 296, 235 A.2d 111, 115 (1967), *cert. denied*, 390 U.S. 1025 (1968). "Lack of trustworthiness may be evinced by his abiding and repeated contempt for laws which he is legally and morally bound to obey . . . though the violations are not concerned solely with crimes involving 'dishonesty and false statement.' " *State v. Duke*, 100 N.H. 292, 293–94, 123 A.2d 745, 746 (1956); *State v. Cote, supra* at 296, 235 A.2d at 115. The fact that the defendant in this case had been convicted of making false official statements, of breaking and entering, and of larceny bears on his veracity and honesty and is therefore relevant.

■ Defendant also argues that the convictions were so remote in time that their probative value was outweighed by their prejudicial effect on the jury. The determination of remoteness is within the sound discretion of the trial court. *State v. Cote supra; State v. Duke supra*. The trial court should consider the fact that "prior convictions have an inherent prejudicial effect and are admitted to impeach the defendant's credibility only because the possibility of prejudice resulting from their introduction in evidence is thought to be outweighed by the legitimate purpose served by it." *State v. Cote, supra* at 297, 235 A.2d at 116.

Mr. Staples was questioned about convictions in 1964 for breaking and entering and larceny, a 1959 conviction for brawl and tumult, and several Uniform Code of Military Justice violations that occurred nearly twenty years before the trial that is the subject of this appeal. With the exception of a 1974 disorderly conduct conviction, which was not offered into evidence, Mr. Staples had not been convicted of any crime occurring within the nine years preceding the alleged assault for which he was convicted in this case.

 Our review of the question whether the trial court abused its discretion, however, is limited by the incomplete record presented to this court. We cannot base a finding that the trial court abused its discretion upon mere speculation. The record shows that numerous prior convictions were referred to at some point during the direct, cross- and re-direct examination of the defendant. The supplementary reserved case and the record, however, do not indicate which or how many of the defendant's prior convictions were ruled admissible in chambers and off the record prior to their presentation to the jury. Nor was any objection raised at that time. Although attached to the supplementary reserved case is an affidavit of the defendant's trial attorney, which states that three prior convictions were ruled admissible for impeachment purposes, there is again no indication which of the nine convictions were ruled admissible. Moreover, all of the convictions were first brought to the jury's attention by defendant's own counsel. Assuming only three of the convictions were ruled admissible by the court in chambers, it is impossible for us to determine which were raised gratuitously by the defendant and which might have been brought out because the court had ruled them admissible.

 The defendant has the burden of showing that permitting the use of prior convictions at trial would be an abuse of discretion. *Evans v. United States*, 397 F.2d 675, 679 (D.C. Cir. 1968); *Hood v. United States*, 365 F.2d 949, 951 (D.C. Cir. 1966). He also has the burden of seeing to it that this showing is adequately placed in the record. *Evans v. United States, supra* at 680. The fact that the decision in this case was reached in chambers does not extinguish this burden. Judge, now Chief Justice, Burger adequately underscored this point in *Evans* when he stated, that "[t]he court has a right to assume counsel will

discharge this function for there are numerous matters properly conducted in Chamber conferences and off the record." *Id.*

On the state of this record, we cannot determine which of the nine convictions were ruled admissible by the court. We are, therefore, unable to consider the remoteness and prejudicial impact of a particular conviction without speculating that it might or might not have been one admitted over objection of trial counsel. Because the defendant has not presented this court with a sufficient record from which we may consider these factors and in view of the court's discretionary power, we cannot say that the trial court abused its discretion. *See Evans v. United States*, 397 F.2d at 678; *Hood v. United States*, 365 F.2d at 951; *State v. Gullick*, 120 N.H. 99, 411 A.2d 1113 (1980); *Cotter v. Cotter*, 119 N.H. 426, 402 A.2d 198 (1979); *Beaudoin v. Beaudoin*, 118 N.H. 325, 386 A.2d 1261 (1978).

The incomplete record in this case, and our resulting difficulty in determining which of the defendant's prior convictions were ruled admissible, convinces us that some guidance is needed. In the future, when defense counsel wishes to challenge the admissibility of convictions that are not grounded in deceit, he should move for their exclusion prior to the time the evidence is offered before the jury, preferably before trial. This procedure has been available under our liberal rules for at least a century, although not generally called by the Latin name *in limine*. *See generally Gendron v. Pawtucket Mutual Ins. Co.*, 409 A.2d 656 (Me. 1979); *State v. Bennett*, 405 A.2d 1181 (R.I. 1979). This procedure is well suited to cases involving the use of prior convictions because of the prejudice inherent in them. *State v. Cote*, 108 N.H. 290, 235 A.2d 111 (1967).

Hearings on such motions should be heard in the absence of the jury, and on a record sufficiently complete to enable this court to review a trial court finding that the probative value of a particular conviction outweighs its inherent prejudice. *See State v. Cote, supra* at 297, 235 A.2d at 116. The trial court's ruling, on each prior conviction offered, should be made on the record so that this court will, unlike the case at hand, be able to determine which convictions were ruled admissible and whether there has been an abuse of discretion.

If the court excludes prior convictions they may be used

later if, on direct examination, the defendant claims that he has no prior record. *See Harris v. New York*, 401 U.S. 222 (1971); *United States v. Oakes*, 565 F.2d 170 (1st Cir. 1977).

To avoid unnecessary future challenges, even if no objection is made to the use of prior convictions either on the issue of credibility or in sentencing, the trial court should secure from the defendant himself a valid waiver of any claim that any prior conviction was obtained without counsel or a valid waiver of counsel. *See Loper v. Beto*, 405 U.S. 473 (1972); *United States v. Tucker*, 404 U.S. 443 (1972).

*Exceptions overruled.*

KING, J., did not sit; the others concurred.