Grafton
No. 87-491

THE STATE OF NEW HAMPSHIRE

v.

PAUL GRUBER

August 9, 1989

*Stephen E. Merrill,* attorney general (*Brian T. Tucker,* associate attorney general, on the brief and orally), for the State.

*Brennan Professional Association,* of Manchester (*William E. Brennan* and *Yolande N. L. Caron* on the brief, and *Mr. Brennan* orally), for the defendant.

THAYER, J. The defendant, Paul Gruber, was found guilty after a jury trial in Superior Court (*Temple,* J.) of the crime of theft by deception, RSA 637:4, II(c), when he was found to have withheld information from his insurance company that was pertinent to the disposition of property that he alleged to have been stolen and for which he was compensated. On appeal of his conviction, the defendant raises questions concerning the introduction of inadmissible evidence, the unconstitutionality of a provision of the theft by deception statute, RSA 637:4, IV (Supp. 1988), the sufficiency of the evidence, prosecutorial overreaching, and the trial court's failure to admit certain evidence. For the reasons that follow, we affirm.

This case arises from a reported theft of the defendant's property on October 30, 1986. The record of the trial testimony indicates that the following facts could be found. Suzanne Venezia testified that she had known the defendant for approximately ten years. During their relationship, the defendant had given Ms. Venezia cash, checks, gifts, and the use of a State telephone credit card number, issued to the defendant as Clerk of Grafton County Superior Court, in exchange for sex.

The record indicates that on October 30, 1986, the defendant arranged to meet Suzanne Venezia at the Hearthside Motel in Bethlehem, where she resided with her then husband, Thomas Venezia. When the defendant arrived, it appeared to Ms. Venezia that the defendant had been drinking. Suzanne Venezia's husband and her friend, Elizabeth Dube, were also present that evening. The four drank and played strip poker before leaving the motel and going to the defendant's home.

At the defendant's home, the four had more to drink. During the course of the evening, the defendant fell down injuring his nose and lip on a coffee table. Later that evening the defendant went up to his bedroom with Suzanne Venezia and Elizabeth Dube and told them that they could have the jewelry in the bedroom and money if they went to bed with him. The defendant then fell asleep, at which time Elizabeth Dube and the Venezias left the defendant's home, taking with them a VCR, frozen meat, jewelry, piggy banks and blank checks from a joint account held by the defendant and his wife.

The next day the defendant called Suzanne Venezia and asked her to destroy the checks taken, because his wife would prosecute if any of the checks were cashed. Suzanne Venezia testified that she subsequently burned the checks. The defendant also called the Bethlehem police on October 31, 1986, and reported that he had been beaten and robbed.

That same day, the defendant also called his insurance agent at the Hadlock Agency and reported that his house had been burglarized. The defendant told the clerk at the agency that two men had come into his bedroom late on October 30, 1986, cut up his face and knocked him unconscious. He reported several items stolen including a VCR, money and frozen meat. The defendant's claim was processed by American International Adjustment Company, which adjusts claims filed by those holding policies with New Hampshire Insurance Company (NHIC), the defendant's insurer. American International Adjustment Company processed the defendant's claim and issued a draft made payable to the

defendant and his wife in the amount of $530.25. The supervisor who signed the draft testified that he would not have issued the draft if he had been provided with information indicating that the defendant knew who had stolen the property.

In January of 1987, after the police had spoken with Thomas Venezia, search warrants were issued for the residences of Elizabeth Dube and Suzanne Venezia. Pursuant to the execution of the searches some of the property reported stolen was recovered, and the defendant's attorney was informed by the police on January 8, 1987, of the recovery. Subsequently, on February 12, 1987, the defendant's trial counsel presented the defendant's insurance agent with a check from the defendant, in the amount of $530.25. The check was deposited into the insurance company's account. The defendant had never inspected the recovered property prior to making the repayment.

The defendant was indicted in February of 1987 by the Grafton County Grand Jury for the crime of theft by deception. RSA 637:4. The jury trial resulted in a verdict of guilty. The defendant appeals that verdict and raises the following issues on appeal: (1) whether the trial court erred in allowing the introduction of evidence concerning an illicit sexual relationship, alleged criminal acts, wrongs and prior bad acts of the defendant, thereby violating New Hampshire Rules of Evidence 404(a) and (b); (2) whether RSA 637:4, IV (Supp. 1988) is unconstitutional because it is "vague, ambiguous, and/or contradictory to RSA 637:2, 637:4, and/or 637:11"; (3) whether the trial court erred in denying the defendant's motion to set aside the verdict as against the great weight of the evidence; (4) whether the prosecutor's opening statement and closing argument constituted prosecutorial overreaching; and (5) whether the trial court erred in not allowing the introduction of the defendant's insurance policy in evidence.

The first issue raised by the defendant is whether the trial court erred in allowing the State to introduce evidence of the defendant's prior relationship with Suzanne Venezia in violation of New Hampshire Rules of Evidence 404(a) and (b). The defendant first contends that evidence of his relationship with Suzanne Venezia was neither relevant nor material to the crime of theft by deception. The defendant next asserts that even if it was relevant, the State's probing into the defendant's giving Ms. Venezia checks, cash and use of a credit card in exchange for sex would have a negative impact on the jurors, and thus any probative value would be outweighed by the prejudicial effect. The defendant lastly argues on this issue that the evidence is inadmissible evidence of character

under New Hampshire Rule of Evidence 404 because, contrary to the State's contention that it was evidence of intent, the evidence was meant to show the defendant's disposition or propensity to commit the crime charged.

Under the New Hampshire Rules of Evidence, evidence of prior offenses or bad acts is not admissible "to prove the character of a person in order to show that the person acted in conformity therewith." N.H. R. Ev. 404(b). Such evidence is admissible, however, for other purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

■ This court has previously established a three-pronged test to determine the admissibility of prior offense or bad act evidence under Rule of Evidence 404(b). *State v. Trainor*, 130 N.H. 371, 540 A.2d 1236 (1988). We have noted that "[t]he decision to admit such evidence lies within the sound discretion of the trial court upon a determination that the evidence is relevant for a purpose other than character or disposition, that there is clear proof that the defendant committed the prior offenses," *Trainor*, 130 N.H. at 374, 540 A.2d at 1238 (citing *State v. Barker*, 117 N.H. 543, 546, 374 A.2d 1179, 1180 (1977)), and that the prejudice to the defendant does not substantially outweigh the probative value of the evidence, *Trainor*, 130 N.H. at 375, 540 A.2d at 1239. Upon a review of the record, we hold that the evidence in question satisfies the above criteria, and therefore is admissible under New Hampshire Rule of Evidence 404(b).

The evidence of the defendant's prior relationship with Suzanne Venezia meets the first prong of the test, as it was relevant and was admitted for a purpose other than to show character or disposition. *See Trainor*, 130 N.H. at 374, 540 A.2d at 1238. The rules of evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.H. R. Ev. 401. Under our statute, theft by deception occurs when a person "obtains or exercises control over property of another by deception and with a purpose to deprive him thereof." RSA 637:4, I. The statute further provides that such deception occurs when a person purposely "[p]revents another from acquiring information which is pertinent to the disposition of the property involved." RSA 637:4, II(c).

Evidence of the defendant's relationship with Suzanne Venezia demonstrates that the defendant knew who took the property and where it was likely to be located, and thus made it more probable that the defendant intended to withhold information, intentionally deceive, and purposely prevent NHIC from acquiring information as to the property, when the defendant informed his agent that he had been beaten and robbed. It further established that the defendant intended Ms. Venezia to keep the property, as she had done with the defendant's other gifts to her, and thus made it more probable as well that the defendant intended to deprive NHIC of its property. Accordingly, we hold that the evidence was relevant and material, and was not being offered to demonstrate the defendant's propensity to commit the crime for which he was charged. See N.H. R. Ev. 404(b).

Furthermore, we find that there is clear proof, as required by the second prong of *Trainor*, 130 N.H. at 374, 540 A.2d at 1238, that the defendant had committed the prior "bad acts." Although the defendant contends that there was no clear proof, because the testimony was given in substantial part by three "biased convicted felons," the facts before the court were sufficient for the trial judge reasonably to conclude that the defendant made such payments to Suzanne Venezia. In the record there are cancelled checks cashed by her, a receipt for clothing and telephone bills, telephone company records and testimony establishing calls made on the State's telephone credit card by Suzanne Venezia. Accordingly, clear proof of the nature of the defendant's relationship with Suzanne Venezia did exist.

Lastly, *Trainor* requires that the prejudice to the defendant not substantially outweigh the probative value of the evidence. *Trainor*, 130 N.H. at 375, 540 A.2d at 1239. The defendant argues that the State's probing into his relationship with Suzanne Venezia affected the jurors to such an extent that the prejudicial effect of the evidence far outweighed its probative value.

We have previously noted that "[w]hen considering the admissibility of evidence of other crimes under Rule 404(b), the trial court must consider whether the evidence is offered to prove an issue that is actually in dispute and, if so, how serious the dispute really is." *State v. Hickey*, 129 N.H. 53, 60, 523 A.2d 60, 65 (1986). Whether the issue is in dispute should be considered by the court in determining "whether the prejudicial effect of the evidence outweighs its probative value." *Id.* On our facts, the question of the defendant's intent to prevent NHIC from acquiring information

was clearly at issue. In her opening statement, defense counsel argued that when the defendant filed his insurance claim, he did not know the location of the reported property or the way in which it left his home. While the defendant never contested the fact that he had a relationship with Suzanne Venezia, that fact alone was not sufficient to establish the *nature* of the relationship, which consisted of exchanges between Ms. Venezia and the defendant, or to demonstrate that the defendant actually knew who took the property. Because the defendant's intent to deceive NHIC was at issue, evidence demonstrative of that intent was particularly relevant and probative.

The trial court is accorded considerable deference in its determination of whether the prejudice substantially outweighs the probative value. *See U.S. v. Ingraham,* 832 F.2d 229, 233 (1st. Cir. 1987), *cert. denied,* 108 S. Ct. 1738 (1988). In order to show an abuse of discretion, "the defendant must demonstrate that the ruling of the trial court was 'clearly untenable or unreasonable to the prejudice of [the defendant's] case.'" *State v. Hotchkiss,* 129 N.H. 260, 264, 525 A.2d 270, 272 (1987) (quoting *State v. Whitney,* 125 N.H. 636, 639, 484 A.2d 1158, 1160 (1984)). The United States Supreme Court has noted that "extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *Huddleston v. U.S.,* 108 S. Ct. 1496, 1499 (1988). Because of the critical nature of such evidence, courts have noted that while evidence of a prior offense or bad act is always prejudicial, the "prejudice is frequently outweighed by the relevancy of the evidence when a defendant's knowledge or intent is a contested issue in the case." *United States v. Francesco,* 725 F.2d 817, 822 (1st Cir. 1984). Because the defendant's intent was at issue, and because of the highly relevant nature of the evidence, we hold that the evidence had such probative value that we will not overturn its admission by the trial court.

The defendant further argues that the trial judge erred in failing to state the basis for his determination "that the evidence proposed is more probative [than] prejudicial," and the specific Rule 404(b) exception which he relied upon. (Defendant has, of course, incorrectly stated the test.) Although the defendant relies on our decision in *State v. Hickey,* 129 N.H. at 61, 523 A.2d at 65–66, to support this proposition, our ruling in that case merely provided that the trial judge must narrow the purposes for which the evidence is being offered when giving a limiting instruction to the

jury. In this case, however, no limiting instruction was being given to the jury, as none was requested by the defendant's trial counsel; and it was apparent from the discourse at trial, outside the presence of the jury, that the intent exception to Rule 404(b) was being relied upon.

The defendant's last argument is without merit. He argues that it was a violation of due process to expose the jury to evidence of uncharged crimes and bad acts allegedly committed by the defendant, which were in no way related to the charge of theft by deception and which might have been the basis of the jury's verdict. This danger was implicitly considered in the trial court's assessment of probative value versus possible prejudicial effect and the requirement of Rule 404(b) that the evidence only be admitted if it has some "'special' probative value ... where, for example, it is relevant to something other than mere 'character' or 'propensity' ... ." *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982). In this case, the evidence had a "special probative value" because it was relevant to the defendant's intent to deceive NHIC. Because the evidence was properly admitted, we hold that its introduction did not violate due process. For all the above reasons, the trial court did not err in admitting the evidence of the defendant's prior dealings with Suzanne Venezia.

The second issue raised by the defendant is whether RSA 637:4, IV (Supp. 1988) is unconstitutional because it is "vague, ambiguous, and/or contradictory to RSA 637:2, 637:4, and/or 637:11." The defendant asserts that the State relied on RSA 637:4, IV (Supp. 1988) in order to avoid proving, as required by *State v. Kelly*, 125 N.H. 484, 484 A.2d 1066 (1984), the amount of loss allegedly sustained by NHIC.

We hold that the meaning of RSA 637:4, IV (Supp. 1988) is clear and that it is neither inconsistent with nor contradictory to the other statutory language. In *State v. Kelly supra* we held that, under the theft by deception statute, as it existed then, the State was required to prove "that the victim suffered a net loss as well as the amount of that loss." *Kelly*, 125 N.H. at 487, 484 A.2d at 1068; *see* RSA 637:4. In 1986, the legislature amended RSA 637:4 by adding a paragraph which provided that "[a] person commits theft under this section notwithstanding that the victim has suffered no actual or net pecuniary loss." RSA 637:4, IV (Supp. 1988).

■ Contrary to the defendant's assertion, this statutory language does not relieve the State of its burden of proving the value of the property obtained by the defendant; rather, it merely relieves the State of the burden to demonstrate actual or net pecuniary loss to the victim. In making this assertion, the defendant erroneously equates the notions of net pecuniary loss or actual loss with value. However, the value of the property or services taken by deception is separate and distinct from the actual loss suffered, which would take into account whether the victim received something of value in return from the defendant. Because value and actual loss are two distinct concepts, RSA 637:4, IV (Supp. 1988) is not ambiguous or contradictory when read in conjunction with RSA 637:2, V(b) (Supp. 1988), 637:4, and/or 637:11. RSA 637:2, V(b) (Supp. 1988) and 637:11 make reference to value, which the State must still prove under the present statutory structure. RSA 637:4, IV (Supp. 1988) does not eliminate this burden. Accordingly, we hold that RSA 637:4, IV (Supp. 1988) is not ambiguous or vague, and that it is not, therefore, unconstitutional.

The third issue raised by the defendant is whether the trial court erred in denying the defendant's motion to set aside the jury's verdict as against the great weight of the evidence. The defendant argues that the evidence and all reasonable inferences capable of being drawn therefrom could not have sustained the guilty verdict.

■ We have previously noted that the determination whether to deny a motion to set aside the verdict rests within the sound discretion of the court. *State v. Houle*, 120 N.H. 160, 161, 412 A.2d 736, 737 (1980). For this court to overturn the trial court's decision, the defendant must establish "that no rational trier of fact, viewing the evidence most favorably to the State, could have found guilt beyond a reasonable doubt." *See State v. Murray*, 129 N.H. 645, 650, 531 A.2d 323, 327 (1987); *see also State v. Smith*, 127 N.H. 433, 436, 503 A.2d 774, 776 (1985). In addition, we note that a rational trier of fact is "entitled to infer guilt from circumstantial evidence that excludes all other rational conclusions." *Murray*, 129 N.H. at 650, 531 A.2d at 327 (citing *State v. Danskin*, 122 N.H. 817, 818, 451 A.2d 396, 397 (1982)).

The defendant asserts that the State failed to meet its burden of proving the crime of theft by deception because there was no evidence from which the jury could conclude that the defendant had received property from NHIC. The defendant asserts that no representative from NHIC testified that property was taken, and although a draft payable to the defendant and his wife was in evidence, there was no evidence as to how it was endorsed. The

defendant further argues that some, if not all, of the property was owned by Mrs. Gruber, and therefore, a jury could not reasonably determine the value of the property that the defendant allegedly stole.

The evidence presented at trial was sufficient to establish that the defendant obtained $530.25 from NHIC within the meaning of RSA 637:4. We have previously ruled that a fact may be proven by circumstantial evidence. *State v. Wayne Kelly*, 120 N.H. 14, 16, 413 A.2d 300, 302 (1980). "Circumstantial evidence consists of proof of facts or circumstances which give rise to a reasonable inference of the truth of the fact sought to be proved." *Id.* (citing *State v. Canney*, 112 N.H. 301, 294 A.2d 382 (1972)). Accordingly, the jury could infer from the evidence that the defendant obtained $530.25 from NHIC, since it was the defendant who refunded the entire amount of the draft by drawing a check on his bank account the day before he was indicted. Furthermore, the defendant's wife testified that the draft from the insurance company was deposited into the defendant's bank account. Accordingly, there was sufficient circumstantial evidence from which the jury could infer that the defendant obtained the $530.25 from the insurance company, and the State therefore met its burden of demonstrating the value of the property obtained.

The defendant's argument that the State failed to determine the portion of property owned by Mrs. Gruber and therefore failed to prove the value of the property which the defendant had obtained from NHIC is without merit. Mrs. Gruber's interest in the property is irrelevant. The draft issued by NHIC was based upon the defendant's affirmative representations. Furthermore, the defendant's contention that some of the proceeds taken from NHIC belonged to his wife is of no consequence. RSA 637:2, II provides that a person "obtains" property, for purposes of the statute, if that person brings about "a transfer of possession or of some other legally recognized interest in property, whether to the obtainer or another." Therefore, whether the defendant or Mrs. Gruber received the money from NHIC is irrelevant. What is important, and what the record demonstrates, is that the defendant brought about the transfer of the $530.25; he thus is deemed to have "obtained" the property under RSA 637:2.

Equally without merit is the defendant's claim that the State failed to sustain its burden of proof because NHIC never had a witness testify that any of its property was stolen. The record indicates, however, that a property supervisor for the adjusting

company testified that he was authorized to settle claims and could issue drafts on behalf of NHIC, and that he did, in fact, issue a draft on behalf of NHIC to the defendant and his wife. Furthermore, the record demonstrates that the defendant later gave his insurance agent a check in the amount of $530.25 made payable to NHIC. The jury could reasonably have inferred that NHIC had property taken from it. *See Wayne Kelly*, 120 N.H. at 16, 413 A.2d at 302.

Lastly, the defendant argues that the evidence indicates that he had no knowledge of Elizabeth Dube's residence, where some of the stolen property was recovered, and was not under an affirmative duty to provide any information to NHIC which would have been based on conjecture and suspicion. The record indicates, however, that the defendant knew the Venezias and where they lived, and could therefore have given the police a lead as to the location of the property. Furthermore, the defendant made a false representation to the insurance agent when he informed the clerk that two men had knocked him unconscious. The record indicates that the defendant knew the probable location of the property and the true circumstances under which it was taken. The defendant cannot affirmatively deceive and then claim no criminal liability under RSA 637:4. The record indicates that the jury could reasonably have found that the defendant purposely prevented NHIC from "acquiring information which [was] pertinent to the disposition of the property...," *see* RSA 637:4, II(c), and as a result deceptively obtained the property of another under RSA 673:4. *See Wayne Kelly*, 120 N.H. at 16, 413 A.2d at 302. The evidence of the defendant's past relationship with Suzanne Venezia and of the events of October 30, 1986, provides sufficient evidence for a rational trier of fact to have found guilt beyond a reasonable doubt, and the trial court did not, therefore, err in denying the defendant's motion to set aside the verdict. *See Murray*, 129 N.H. at 650, 531 A.2d at 327.

The fourth issue the defendant raises is whether the prosecutor's opening statement and closing argument contained inflammatory and prejudicial statements which rose to the level of "prosecutorial overreaching" and therefore require a reversal of the jury verdict. We agree with the State that the defendant is procedurally barred from raising this issue on appeal. The record reveals that the defendant's trial counsel did not object to the State's opening statement or closing argument. This court "'will not consider grounds of objections not specified or called to the court's

attention at the trial.'" *State v. Johnson*, 130 N.H. 578, 587, 547 A.2d 213, 218 (1988) (quoting *State v. Cassell*, 129 N.H. 22, 24, 523 A.2d 40, 41 (1986)). Accordingly, this issue is not properly before us.

The final issue raised by the defendant is whether the trial court erred in excluding the defendant's insurance policy from evidence. The defendant argues that the conduct and requirements of the parties are dictated by the insurance contract which they had executed, and that therefore the contract is relevant as to whether NHIC was deceived. The defendant further argues that the fact that NHIC never voided the contract upon learning of the alleged deceit, in accordance with the contractual terms, indicates that NHIC never perceived the activities of the defendant as deceptive.

 In New Hampshire, the admissibility of evidence is within the sound discretion of the trial court. *State v. Duff*, 129 N.H. 731, 734, 532 A.2d 1381, 1383 (1987). We agree with the trial court's observation, made in chambers, that "[w]hether or not the company availed itself of the right to declare the policy void ... would have no meaning or bearing on whether or not in fact an objective showing of deception has been made." Furthermore, we note that the trial court appears to have weighed the minimal relevance of the evidence against the likelihood that the jury would be confused or misled by the evidence, and appropriately excluded the evidence. *See* N.H. R. Ev. 403. Accordingly, we hold that the trial court did not abuse its discretion in excluding the defendant's insurance policy from evidence. For the reasons stated above, we affirm the defendant's conviction.

*Affirmed.*

BROCK, C.J., and JOHNSON, J., did not sit; the others concurred.